UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

John M. Preterotti,

    Plaintiff,

    v.                           Civil Action No. 2:16-cv-72-wks-jmc

Dan Souliere,

    Defendant.

## REPORT AND RECOMMENDATION
(Doc. 10)

Plaintiff John Preterotti, an inmate proceeding *pro se*, brings this action under 42 U.S.C. § 1983.  He alleges that Defendant Correctional Officer Dan Souliere[1] violated his rights under the Fourth and Eighth Amendments by subjecting him to a "strip search" in front of other inmates during an incident that was recorded by a security camera transmitting footage to "main control."  (Doc. 4 at 4–5, ¶ 6.)  For relief, Preterotti seeks $60,000 in compensatory damages; $150,000 in punitive damages; $40,000 for his pain and suffering; and $35,000 for his "emotional injuries," including humiliation.  (*Id.* at 6, ¶ 9.)

Preterotti filed his Complaint on March 16, 2016.  (Doc. 4.)  In response, Souliere filed the pending Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of jurisdiction and failure to state a claim.  (Doc. 10.)  Therein, Souliere

---

[1] The parties use two spellings of "Souliere" in their papers (i.e., Soulier and Souliere).  Herein, I refer to him as Souliere.

argues as follows: (1) Preterotti has failed to properly exhaust his administrative remedies, as required by the Prison Litigation Reform Act (PLRA), and thus this Court lacks subject-matter jurisdiction to hear his claims (*id.* at 3–8, 15); (2) Preterotti's claims against Souliere in his official capacity are barred by 42 U.S.C. § 1983 and by sovereign immunity (*id.* at 9–10); (3) Preterotti has failed to sufficiently allege violations of his Fourth and Eighth Amendment rights (*id.* at 11–14); (4) Preterotti is not entitled to compensatory damages under § 1983 because he did not suffer a physical injury (*id.* at 14–15); and (5) Preterotti has not alleged facts sufficient to satisfy the elements of a punitive damages claim under § 1983 (*id.* at 15).  Preterotti has filed a Response opposing Souliere's Motion.[2]  (Doc. 18.)

For the reasons stated below, I recommend that Souliere's Motion to Dismiss (Doc. 10) be GRANTED.

## Background

For the purpose of deciding Souliere's Motion, the Court accepts as true all of the factual allegations contained in Preterotti's Complaint (Doc. 4), as summarized below.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

---

[2]  The filing deadline for Preterotti's Response was September 26, 2016.  (*See* Doc. 17.)  Preterotti's Response was filed on September 28, 2016.  (*See* Doc. 18.)  However, "[u]nder the 'prison mailbox rule,' a *pro se* document is deemed filed at the time it was delivered to 'prison authorities for forwarding to the court clerk.'"  *Barron v. Pallito*, No. 1:09–cv–209, 2010 WL 3812233, at *2 (D. Vt. Aug. 12, 2010) (quoting *Houston v. Lack*, 487 U.S. 266, 276 (1988)).  If it is unclear when a *pro se* inmate mailed his document, "courts have assumed that the petitioner submitted the petition on the same date it was purportedly signed and dated."  *Id.* (quoting *Tracy v. Freshwater*, No. 5:01-CV-0500(NPM/GHL), 2008 WL 850594, at *1 (N.D.N.Y. Mar. 28, 2008), *vacated and remanded on other grounds*, 623 F.3d 90 (2d Cir. 2010)).  Here, that date was September 23, 2016, rendering the Response timely.  (*See* Doc. 18-2.)

During the relevant period, Preterotti was an inmate with the Vermont Department of Corrections (DOC) at the Northern State Correctional Facility (NSCF) in Newport, Vermont.  (Doc. 4 at 4, ¶ 6.)  On November 26, 2015, Preterotti was working in the kitchen at NSCF during the Thanksgiving meal.  (*Id.*)  Afterward, Preterotti and "the other inmates" were subject to a "pat-frisk" before returning to their units.  (*Id.*)  Preterotti joked to Souliere that he had "20 bags of chips" in his pants.  (*Id.*; *see also* Doc. 4-1 at 5 (referring to "20 bags of potato chips").)  In response, Souliere ordered Preterotti to pull down his pants, in the presence of the other inmates, and in front of a camera with a live feed to "main control." (Doc. 4 at 4, ¶ 6.)  Souliere then inspected Preterotti's "private area" to determine whether Preterotti had secreted the 20 bags of chips on his person.  (*Id.* at 5, ¶ 6).  Preterotti "felt dehumanized" because the "strip search" was conducted in the presence of the other inmates and recorded by the camera.  (*Id.*)

## Analysis

### I.       Standard of Review Under Rules 12(b)(1) and 12(b)(6)

Souliere moves to dismiss Preterotti's Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (Doc. 10.)  "A case is properly dismissed for lack of subject[-]matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  When moving to dismiss under Rule 12(b)(1), "the defendant may challenge either the legal or factual sufficiency of the plaintiff's assertion of jurisdiction, or both." *Robinson v. Gov't of Malay.*, 269 F.3d 133, 140 (2d Cir. 2001).

In order to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678); *see also* Fed. R. Civ. P. 8(a)(2).  Two principles guide a plausibility determination: first, though a court must accept as true all factual allegations in the complaint, this requirement "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Turkmen v. Hasty*, 789 F.3d 218, 233 (2d Cir. 2015).  "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

When parties seek dismissal of *pro se* complaints under Rule 12(b)(6), "courts 'apply[] a more flexible standard to evaluate their sufficiency than we would when reviewing a complaint submitted by counsel.'" *Thompson v. Pallito*, 949 F. Supp. 2d 558, 571 (D. Vt. 2013) (alteration in original) (quoting *Lerman v. Bd. of Elections in City of N.Y.*, 232 F.3d 135, 140 (2d Cir. 2000)).  The basis for this liberal construction is "the understanding that '[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (per curiam) (alteration in original)

(quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). Nevertheless, a complaint filed by a *pro se* plaintiff "must state a plausible claim for relief." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013); *see also Thompson*, 949 F. Supp. 2d at 571.

## II.      Failure to Exhaust Under the PLRA

Souliere argues that Preterotti did not properly exhaust his administrative remedies pursuant to the DOC grievance process, and thus his claims are barred by the PLRA and this Court lacks jurisdiction over them under Rule 12(b)(1).  (Doc. 10 at 3–8, 15.)  The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Hernández v. Coffey*, 582 F.3d 303, 305 (2d Cir. 2009) (alterations in original) (quoting 42 U.S.C. § 1997e(a)); *see generally Ross v. Blake*, 136 S. Ct. 1850 (2016).

Exhaustion must be proper—that is, it must "compl[y] with an agency's deadlines and other critical procedural rules . . . ." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).  In other words, inmates must adhere to the grievance process set out by the institution where they are incarcerated.  *Jones v. Bock*, 549 U.S. 199, 218 (2007) ("[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."); *see also Gilbeau v. Pallito*, Civil Action No. 1:11–CV–232, 2012 WL 2416719, at *4 (D. Vt. May 22, 2012). The Supreme Court has held that the unavailability of administrative remedies is the only

proper exception to an "inmate's obligation to exhaust." *Ross*, 136 S. Ct. at 1856.[3]  An

administrative remedy may be unavailable in one of three circumstances: (1) when,

notwithstanding regulations or guidance materials, an administrative procedure is "a simple

dead end—with officers unable or consistently unwilling to provide any relief to aggrieved

inmates"; (2) when the procedure is "so opaque that it becomes, practically speaking,

incapable of use," so that "no ordinary prisoner" could make sense of the process; or

(3) when "prison administrators thwart inmates from taking advantage of a grievance

process through machination, misrepresentation, or intimidation." *Id.* at 1859–60.

Administrative exhaustion is "not a jurisdictional predicate," but rather "failure to

exhaust is an affirmative defense."  *Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004),

*abrogated on other grounds by Ross v. Blake*, 136 S. Ct. 1850 (2016).  Therefore, Souliere's

Motion to Dismiss for failure to exhaust is properly addressed under Rule 12(b)(6), rather

than Rule 12(b)(1).  *See, e.g.*, *Baez v. Bureau of Prisons, Warde*n, No. 02 Civ.

9216(PKC)DF, 2004 WL 1777583, at *3 (S.D.N.Y. May 11, 2004) (citing cases)

("Although Defendants' argument that [plaintiff] has not fully exhausted his claim does not

implicate Rule 12(b)(1), that argument may still be properly considered under Rule

---

[3]  Prior to the Supreme Court's June 2016 decision in *Ross v. Blake*, courts in this circuit applied a three-part inquiry under *Hemphill v. New York*, 380 F.3d 680 (2d Cir. 2004)—which Souliere applies here—to determine whether a plaintiff was excused from meeting the requirements of § 1997e(a) of the PLRA.  *See Hemphill*, 380 F.3d at 686.  Under this framework, courts could excuse a plaintiff's failure to exhaust if: (1) administrative remedies were not available to the inmate; (2) the defendant waived the defense by failing to raise or preserve it; or (3) "special circumstances" justified the inmate's failure to exhaust his administrative remedies.  *Id.*  In *Ross*, the Court explicitly rejected the "special circumstances" exhaustion exception to the PLRA and explained that, "aside from [the unavailable administrative remedies] exception, the PLRA's text suggests no limits on an inmate's obligation to exhaust."  136 S. Ct. at 1856.

12(b)(6).”); *Brito v. Vargas*, No. 01–CV–7753(FB)(LB), 2003 WL 21391676, at *1

(E.D.N.Y. June 16, 2003) (finding that defendants’ Rule 12(b)(1) motion to dismiss for

failure to exhaust was “more appropriately addressed under Rule 12(b)(6)”).

      Under Rule 12(b)(6), the question “is not whether the plaintiff will ultimately prevail,

but whether his claim, as pleaded, is sufficient to afford him the opportunity to proceed on

the evidence.” *Baez v. Parks*, No. 02 Civ.5821 PKC DF, 2004 WL 1052779, at *3

(S.D.N.Y. May 11, 2004) (citing *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998)).

Because failure to exhaust is an affirmative defense, the defendant has the burden “to

demonstrate nonexhaustion,” and it is “not [the] [p]laintiff’s burden to plead exhaustion

with particularity.” *Barnes v. County of Monroe*, 85 F. Supp. 3d 696, 722 (W.D.N.Y.

2015); *see also Jones*, 549 U.S. at 216 (“[I]nmates are not required to specially plead or

demonstrate exhaustion in their complaints.”); *Grullon v. City of New Haven*, 720 F.3d 133,

141 (2d Cir. 2013) (same).  Accordingly, it is generally inappropriate for a district court to

grant a motion to dismiss on failure to exhaust grounds, unless nonexhaustion is evident on

the face of the plaintiff’s complaint.  *Morgan v. Ward*, 1:14-cv-7921-GHW, 2016 WL

427913, at *4 (S.D.N.Y. Feb. 2, 2016); *see also Lewis v. Havernack*, Civil Action No. 9:12–

CV–0031 (GLS/DEP), 2013 WL 1294606, at *4 (N.D.N.Y. Mar. 28, 2013) (“The

exhaustion defense is one that is not particularly well-suited for resolution for a motion to

dismiss, absent the clearest indication in a plaintiff’s complaint that a failure to exhaust has

occurred.”); *Nicholson v. Murphy*, No. 302CV1815(MRK), 2003 WL 22909876, at *6

(D. Conn. Sept. 19, 2003) (“By characterizing non-exhaustion as an affirmative defense, the

Second Circuit suggests that the issue of exhaustion is generally not amenable to resolution by way of a motion to dismiss.").

Here, Preterotti's failure to exhaust administrative remedies is not apparent on the face of his Complaint.  (*See* Doc. 4).  The Court also notes that it cannot consider the materials attached to Souliere's Motion, including the affidavit of DOC Grievance Coordinator David Turner (Doc. 10-1), on a motion to dismiss.  *See Evans v. Cuzback*, 14cv7887(NSR), 2016 WL 554845, at *1 n.2 (S.D.N.Y. Feb. 9, 2016) (refusing to consider grievance coordinator's affidavit, attached to defendant's motion to dismiss, because the court is only "entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents 'integral' to the complaint and relied upon in it" (quoting *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014))).  Accordingly, because the question of proper exhaustion should be determined at the summary judgment stage, I recommend that Souliere's Motion to Dismiss be DENIED on that issue.  I express no opinion with regard to whether Preterotti's allegations can ultimately withstand a properly filed motion for summary judgment for failure to exhaust.[4]

---

[4]  When nonexhaustion is not evident on the face of the complaint, the court may convert the defendant's motion to dismiss to a motion for summary judgment, "limited to the narrow issue of exhaustion and the relatively straightforward questions about the plaintiff's efforts to exhaust, whether remedies were available, or whether exhaustion might be, in very limited circumstances, excused." *McCoy v. Goord*, 255 F. Supp. 2d 233, 251 (S.D.N.Y. 2003).  When a court decides to convert a motion to dismiss in an action brought by a *pro se* prisoner, "the potential consequences of a motion for summary judgment as well as the procedural requirements for responding to one must first be explained, and the [c]ourt must allow [p]laintiff the opportunity to take discovery." *McIntosh v. United States*, Case No. 14-CV-7889 (KMK), 2016 WL 1274585, at *13 (S.D.N.Y. Mar. 31, 2016).  The Court declines to convert Souliere's Motion to Dismiss into a motion for summary judgment here.  *See Samuels v. Fischer*, 168 F. Supp. 3d 625, 654 (S.D.N.Y. 2016) (refusing to convert a motion to dismiss into a summary judgment motion because there was not "sufficient reason to bifurcate discovery and delay the ultimate resolution of th[e] case . . .").

*Trapani v. Pullen*, 9:14-CV-00556 (TJM/TWD), 2016 WL 1295137, at *8 (N.D.N.Y. Feb. 18, 2016).

### III.   "Person" Under § 1983 and Souliere's Sovereign Immunity

Souliere argues that Preterotti's claims against him in his official capacity are not cognizable under 42 U.S.C. § 1983 because a state official sued in his or her official capacity is not a "person" as that term is defined under the statute.   Furthermore, he contends that Preterotti's official capacity claims for money damages are barred by the doctrine of sovereign immunity.[5]   (Doc. 10 at 9–10.)   In response to Souliere's Motion, Preterotti states that sovereign immunity does not afford immunity or protection to individuals involved in "[e]gregious," "criminal," or "policy[-]breaking" action.   (Doc. 18 at 4.)

Preterotti does not state whether he has sued Souliere in his official or individual capacity.   "[W]here a *pro se* litigant does not specify in what capacity the individual defendants are being sued, courts generally 'liberally construe the complaint as alleging both official and individual capacity claims.'"   *Anderson v. Pedalty*, No. 14–CV–00192,

---

[5]   It appears that Souliere brings this Motion under 12(b)(1) with respect to his PLRA claims, and under 12(b)(6), with respect to all other claims, including the claim that suit is barred against him by both § 1983 and sovereign immunity.   (*See* Doc. 10 at 15 (requesting that the Court dismiss the Complaint, in part "because the Court lacks subject[-]matter jurisdiction because Plaintiff failed to properly exhaust his administrative remedies prior to filing suit").)   "[W]hether the claim of sovereign immunity constitutes a true issue of subject[-]matter jurisdiction or is more appropriately viewed as an affirmative defense is an open question in the Supreme Court and the Second Circuit."   *Carver v. Nassau Cty. Interim Fin. Auth.*, 730 F.3d 150, 156 (2d Cir. 2013) (citing *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 391 (1998)).   The distinction is potentially significant because the court "must accept all factual allegations in a complaint as true when adjudicating a motion to dismiss under [Rule] 12(b)(6)," but "may resolve disputed factual issues by reference to evidence outside the pleadings" when adjudicating a motion to dismiss for lack of jurisdiction under Rule 12(b)(1).   *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 77 n.4 (2d Cir. 2007).   It is unnecessary to resolve the issue here, however, because the facts bearing on the sovereign immunity issue are the same under either the Rule 12(b)(1) or the Rule 12(b)(6) standard.

2015 WL 1735192, at *3 (W.D.N.Y. Apr. 16, 2015) (quoting *McCloud v. Kane*, 491 F. Supp. 2d 312, 316 (E.D.N.Y. 2007)).  Applied here, the Court assumes Preterotti intended to sue Souliere in both capacities.

Under 42 U.S.C. § 1983, a claimant may bring suit "against '[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . .'" *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (alterations in original) (quoting 42 U.S.C. § 1983).  "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Id.* (citing *Carey v. Piphus*, 435 U.S. 247, 254–57 (1978)).  A claimant may only bring suit against a "person" within the meaning of §1983. *See, e.g.*, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010).  "Neither a state nor one of its agencies nor an official of that agency sued in his or her official capacity is a 'person' under § 1983." *Spencer v. Doe*, 139 F.3d 107, 111 (2d Cir. 1998) (citing *Hafer v. Melo*, 502 U.S. 21, 26 (1991)).  Accordingly, Preterotti cannot sue Souliere in his official capacity under 42 U.S.C. § 1983 because as an official of the DOC—a Vermont state agency—Souliere is not considered a "person" under the statute.  *Id.*

Furthermore, the doctrine of sovereign immunity bars suits for money damages against state officials in their official capacities.  The Eleventh Amendment provides immunity to states and state agencies "from suits brought by private parties in federal court." *In re Charter Oak Assocs.*, 361 F.3d 760, 765 (2d Cir. 2004) (citing *Seminole Tribe*

*of Fla. v. Florida*, 517 U.S. 44, 54 (1996)).  Sovereign immunity extends to "state officials sued for damages in their official capacity."  *Minotti v. Lensink*, 798 F.2d 607, 609 (2d Cir. 1986) (citing *Kentucky v. Graham*, 473 U.S. 159 (1985)).  Therefore, a lawsuit brought against a state official in his official capacity is treated as equivalent to litigation against the State itself for immunity purposes.  *Will*, 491 U.S. at 71.  Because Preterotti's suit against Souliere in his official capacity is considered a suit against the State of Vermont, it is barred by the doctrine of sovereign immunity.  *See Minotti*, 798 F.2d at 609.

There are two exceptions to the sovereign immunity doctrine: a state can waive its immunity to suit, or Congress can abrogate a state's immunity by statute.  *Id.* at 66.  Neither of those exceptions applies here.  First, Vermont has not expressly waived its sovereign immunity and did not invoke federal jurisdiction by initiating or removing this case to federal court.  *See Thompson*, 949 F. Supp. 2d at 572 ("Vermont has not waived its sovereign immunity under § 1983." (citing Vt. Stat. Ann. tit. 12, § 5601(g))).  Second, Congress has not abrogated Vermont's immunity by statute.  *See Muhammad v. Gold*, No. 1:05–CV–146, 2007 WL 3088133, at *2 (D. Vt. Oct. 23, 2007) ("There is no indication in 42 U.S.C. §1983 that Congress intended to abrogate state sovereign immunity, and the Supreme Court has specifically held that Congress did not intend to override well-established immunities such as state sovereign immunity when it enacted § 1983." (citing *Will*, 491 U.S. at 67)).

Preterotti contends that sovereign immunity does not extend to individuals involved in "[e]gregious," "criminal," or "policy[-]breaking" actions.  (Doc. 18 at 4.)  He claims that because Souliere allegedly violated the Constitution and a DOC guidance document on

11

conducting strip searches, he is not protected by any immunities.[6]  (Doc. 18 at 4, 5 (citing

Doc. 18-1 at 2 (*State of Vt. Agency of Human Servs., Dep't of Corr., Ne. Corr. Complex:*

*Searches of Offenders* (2016)).)  Preterotti does not point to any case law to support this

proposition, and no criminal conduct is alleged in the Complaint. Furthermore, Souliere's

alleged failure to adhere to a DOC directive has no bearing on Preterotti's § 1983 claims, as

explained below.  Moreover, as discussed below, even assuming the truth of his allegations,

Preterotti fails to sufficiently allege a violation of his constitutional rights.

For these reasons, I recommend that Souliere's Motion to Dismiss be GRANTED,

insofar as it seeks dismissal of Preterotti's claims for money damages against him in his

official capacity.

## IV.   Constitutional Claims Against Souliere

Assuming *arguendo* that Preterotti's claims against Souliere in his official capacity

are not barred by 42 U.S.C. § 1983 and the sovereign immunity doctrine, Preterotti's

constitutional claims against Souliere nevertheless fail.  As discussed below, Preterotti's

constitutional claims fail in their entirety, regardless of whether they are asserted against

Souliere in his official or individual capacity.

### A.      Fourth Amendment Claims

Preterotti contends that the search of his person after he announced that he was

concealing 20 bags of potato chips in his pants violated his right under the Fourth

Amendment to be free from unreasonable search and seizure.  Preterotti alleges that the

---

[6] Preterotti alleges that criminal and unconstitutional behavior bars both sovereign immunity and
qualified immunity.  (Doc. 18 at 4.)  Because Souliere does not advance a qualified immunity defense in his
pending Motion, however, the Court need not address qualified immunity here.

search should have been conducted in a private area, and that the public nature of the search—occurring in front of other inmates and correctional staff and in view of a camera—"dehumanized" and "humiliat[ed]" him.  (Doc. 4 at 5, ¶ 7.)  Preterotti further asserts that the "playful joking" he engaged in before the search was "not a true threat to [i]nstitutional [s]ecurity."  (Doc. 18 at 6.)  Preterotti argues that because it would not have been possible for him to conceal 20 bags of potato chips in his pants, the search was not motivated by a concern for safety but rather by Souliere's "own personal [i]ssues with [him]."  (*Id.*)  Finally, Preterotti claims that Souliere "directly and maliciously" defied DOC policies in violation of the Fourth Amendment.  (*Id.*)  Souliere responds by asserting that as an inmate at NSCF, Preterotti did not have a reasonable expectation of privacy to be free from strip searches, and that Souliere conducted the strip search pursuant to legitimate security concerns after Preterotti announced that he was concealing contraband on his person.  (Doc. 10 at 11 (citing Doc. 4 at 4, ¶ 6).)

The Fourth Amendment, which applies to the states through the due process clause of the Fourteenth Amendment, *see, e.g.*, *Mapp v. Ohio*, 367 U.S. 643, 655 (1961), guarantees the right "to be secure . . . against unreasonable searches and seizures," U.S. Const. amend. IV.  Strip searches are undeniably "an extraordinary invasion of privacy."  *Fate v. Charles*, 24 F. Supp. 3d 337, 352 (S.D.N.Y. 2014).  Nonetheless, the Supreme Court has held that strip searches at correctional facilities are valid under the Fourth Amendment, so long as "the officer's decision to search [is] justified either by individualized reasonable suspicion or by a reasonable general policy."  *Id.*; *see also Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 132 S. Ct. 1510, 1517–23 (2012); *Hartline v. Gallo*, 546 F.3d 95,

100–01 (2d Cir. 2008).  Correctional officers may also "search a detainee pursuant to a general policy, rather than a reason specific to that detainee, because of 'the difficulties of operating a detention center'; specifically, maintaining safety, order, and hygiene among a sizeable, constantly changing, and potentially dangerous group of detainees housed together in the general population."  *Fate*, 24 F. Supp. 3d at 348 (quoting *Florence*, 132 S. Ct. at 1515–18) (upholding routine strip searches of arrestees entering a facility's general population)); *see also Bell v. Wolfish*, 441 U.S. 520, 558–59 (1979) (finding body cavity searches conducted after inmate contact visits with individuals outside the institution constitutional).  Moreover, these searches are justified to "further the legitimate interest of discovering contraband."  *Walker v. Ponte*, 14 Civ. 8507 (ER), 2016 WL 4411415, at *4 (S.D.N.Y. Aug. 18, 2016) (citing *Bell*, 441 U.S. at 560); *see also Covino v. Patrissi*, 967 F.2d 73, 79 (2d Cir. 1992) (finding that random visual body cavity searches pursuant to department policy were "reasonably related" to "legitimate penological interests"); *Jean-Laurent v. Wilkerson*, 438 F. Supp. 2d 318, 323 (S.D.N.Y. 2006), *aff'd*, 461 F. App'x 18 (2d Cir. 2012) ("Generally, strip searches have been upheld as a reasonable security measure within a correctional facility[,] even in the absence of probable cause[,] as long as they are related to a legitimate penological goal.").

Here, Preterotti's own allegations reveal that Souliere had both an individualized reasonable suspicion sufficient to justify the search, and that the search was a reasonable one.  At the outset, it must be noted that courts in this circuit have consistently held that an otherwise constitutional strip search, performed in the interest of institutional security, is not invalidated by the presence of other inmates, correctional officers, or security cameras.  *See,*

*e.g.*, *Walker*, 2016 WL 4411415, at *4 ("That the strip searches were carried out in front of cameras and other inmates does not counter th[e] legitimate security interest [of discovering contraband]."); *Smith v. City of New York*, No. 14 Civ. 5934(JCF), 2015 WL 3929621, at *2 (S.D.N.Y. 2015) ("[N]either the presence of cameras nor the presence of other inmates and employees of a correctional facility makes an otherwise constitutional strip search unconstitutional."); *Vaughn v. Strickland*, Nos. 12 Civ. 2696(JPO), 12 Civ. 3335(JPO), 12 Civ. 2995(JPO), 12 Civ. 3333(JPO), 2013 WL 3481413, at *5 (S.D.N.Y. July 11, 2013) ("[I]nsofar as Plaintiffs allege that the presence of other inmates underscores the unconstitutionality of the search, courts have repeatedly held 'that strip searches of prisoners in the presence of other inmates and staff [are] not constitutionally defective, especially in light of legitimate security concerns.'" (quoting *Miller v. Bailey*, No. 05-CV-5493(CBA)(LB), 2008 WL 1787692, at *9 (E.D.N.Y. Apr. 17, 2008))); *Israel v. City of New York*, No. 11 CIV. 7726 JMF, 2012 WL 4762082, at *3 (S.D.N.Y. Oct. 5, 2012) (finding that the "presence of other inmates and officers, males and females," did not alter the determination that suspicionless strip searches of plaintiff were reasonably related to a valid security interest). *But see Dixon v. Santiago*, No. 3:15-cv-1575 (JAM), 2015 WL 9582729 (D. Conn. Dec. 30, 2015) (denying motion to dismiss declaratory and injunctive relief claims where plaintiff alleged a strip search conducted in front of other inmates, correctional officers, and a security camera violated his Fourth Amendment rights).

On the other hand, courts have determined that "the humiliation caused by strip searches may be sufficient to make out a [Fourth Amendment] claim when conducted intentionally to harass or embarrass the plaintiff." *Walker*, 2016 WL 4411415, at *5 (citing

*Hayes v. Marriott*, 70 F.3d 1144, 1147, 1148 n.5 (10th Cir. 1995) (remanding plaintiff's

constitutional claims alleging that he was subject to a videotaped strip search in front of

over 100 individuals, including nonessential female staff members, and that defendants had

"allow[ed] unlimited, unmonitored viewing of the tapes")).  In order to challenge a strip

search on this basis, "the plaintiff must allege facts suggesting that the search did not serve a

legitimate penological purpose, but was instead designed to intimidate, harass, or embarrass

him." *Smith*, 2015 WL 3929621, at *2.  For example, in *Smith*, the plaintiff's challenge to

certain strip searches failed, despite allegations that they were conducted solely for the

purpose of humiliation, because the searches were conducted "in situations where the

legitimate purpose of preventing the import or export of contraband [after contact visits and

before transporting inmates] [wa]s clear." *Id.* at *3.  The court also noted that "[t]here [wa]s

no indication that the presence of other inmates was anything but incidental to the searches,"

and that there were "no allegations suggesting that the search locations were chosen in order

to expose undressed inmates to the gaze of others." *Id.*  By contrast, in *George v. City of

New York*, the inmates' Fourth Amendment claims survived a motion to dismiss because the

allegations indicated that the *sole purpose* of the strip search was to "humiliate [them] . . . in

front of trainee co[rr]ections officers," and to instruct trainee officers "on how to inflict

public humiliation on inmates." Nos. 12 Civ. 6365(PKC)(JLC), 13 Civ. 3511(PKC)(JLC),

13 Civ. 3514(PKC)(JLC), 2013 WL 5943206, at *7 (S.D.N.Y. Nov. 6, 2013).

     Preterotti himself states that after completion of his kitchen work shift he told

Souliere he had 20 bags of potato chips concealed in his pants.  (Doc. 4 at 4, ¶ 6; Doc. 4-1 at

5.)  Souliere's strip search of Preterotti was based on Preterotti's statement alone and clearly

related to a legitimate penological interest in preventing kitchen theft and the introduction of stolen food into the general population of NSCF.  Preterotti does not allege in his Complaint that the sole purpose of the search was to degrade him.  As noted above, Preterotti argues that Souliere's "[u]lterior motive [was] to punish" him and that the strip search was not based on institutional security concerns, but rather on Souliere's "own personal [i]issues" with him.  (Doc. 18 at 6.)  However, by any reading of the Complaint, Souliere conducted the search in an effort to detect and recover the institutional property that Preterotti stated he possessed.  Quite simply, Preterotti's statements and behavior led Souliere to reasonably conclude that a search to recover the property was warranted.

Preterotti's claim that Souliere failed to adhere to DOC policies when he conducted the search (*see* Doc. 18 at 6) does not change the analysis.  Preterotti refers to a Northeast Correctional Complex directive, which states: "As much privacy as is practical should be provided during the strip search."  (Doc. 18-1 at 2.)  But it is unclear if this document even applied to Souliere, given that it is from the Northeast Correctional Complex in St. Johnsbury, Vermont and Souliere is an employee of NSCF in Newport.  (*See id.* at 1 ("This directive provides guidance for searches of persons in the custody of or under the supervision of the Northeast Correctional Complex, as well as persons who visit the Complex.").)  But assuming the directive applied to the search of Preterotti, and further assuming that Souliere violated its terms, "there is no federal constitutional liberty interest in having . . . prison officials follow prison regulations." *Holland v. City of New York*, 14 Civ. 5517 (AT), 2016 WL 3636249, at *12 (S.D.N.Y. June 24, 2016) (alteration in original) (quoting *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003)); *see also Burroughs v.*

*Petrone*, 138 F. Supp. 3d 182, 219 (N.D.N.Y. 2015) ("A section 1983 claim brought in

federal court is not the appropriate forum to raise violations of prison regulations."); *Rivera*

*v. Wohlrab*, 232 F. Supp. 2d 117, 123 (S.D.N.Y. 2002) (same); *Lopez v. Reynolds*, 998 F.

Supp. 252, 259 (W.D.N.Y. 1997) ("A prison inmate does not have a viable § 1983 claim

based solely on prison officials' failure to adhere to the requirements of prison regulations,

directives[,] or policy statements.").

Therefore, Preterotti's Complaint fails to sufficiently allege that a Fourth

Amendment violation occurred.  Accordingly he has failed to state a claim upon which

relief can be granted against Souliere, in either his official or individual capacity.  I thus

recommend that Souliere's Motion to Dismiss be GRANTED, insofar as it seeks dismissal

of Preterotti's claim for money damages for the alleged Fourth Amendment violation.

### B.    Eighth Amendment Claims

Preterotti also contends that the search of his person was a violation of his Eighth

Amendment right to be free from cruel and unusual punishment.  Preterotti claims that the

strip search—conducted in front of other inmates and correctional staff and recorded by a

security camera—was so dehumanizing and humiliating that it constituted "cruel and

unusual punishment."  (Doc. 4 at 5, ¶ 7.)  He further asserts in his Response that the search

was a "deliberate violation" of his "emotional [and] mental health," and a "deprivation of

[his] dignity[,] humanity[,] and decency."  (Doc. 18 at 6.)  Souliere seeks dismissal of this

claim, arguing that Preterotti has not pleaded sufficient facts to demonstrate that the strip

search was a "sufficiently serious" deprivation of a basic human need to rise to the level of

an Eighth Amendment violation.  (Doc. 10 at 13.)

To plausibly allege a claim of cruel and unusual punishment under the Eighth

Amendment,[7] "the plaintiff must satisfy both an objective test and a subjective test." *Jolly*

*v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996).  The first prong requires the plaintiff to

"demonstrate that the conditions of his confinement result[ed] 'in unquestioned and serious

deprivations of basic human needs.'"  *Id.* (quoting *Anderson v. Coughlin*, 757 F.2d 33, 35

(2d Cir. 1985)).  An inmate must show that these deprivations were "extreme," because

"routine discomfort is 'part of the penalty that criminal offenders pay for their offenses

against society.'"  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes v. Chapman*,

452 U.S. 337, 347 (1981)); *see also Sims v. Artuz*, 230 F.3d 14, 21 (2d Cir. 2000).  Under

the subjective test, the plaintiff must demonstrate that the prison official acted with

"deliberate indifference to inmate health or safety."  *Phelps v. Kapnolas*, 308 F.3d 180, 185

(2d Cir. 2002) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  In other words, the

official must "know[] of and disregard[] an excessive risk to inmate health or safety."

*Farmer*, 511 U.S. at 837.

In the Second Circuit, courts "have noted the difficulty of alleging an Eighth

Amendment violation deriving from 'a single strip search,' as such searches generally

reflect a legitimate penological purpose, rather than the wanton infliction of an objectively

serious deprivation."  *Vaughn*, 2013 WL 3481413, at *3.  "Even where inmates allege

aggressive or inappropriate behavior during strip searches," courts have held that this

conduct does not amount to an Eighth Amendment violation.  *Id.*  In fact, case law from this

---

[7]  For state prisoners, the Eighth Amendment applies to the states through the Fourteenth
Amendment.  *See Caiozzo v. Koreman*, 581 F.3d 63, 69 n.3 (2d Cir. 2009).

circuit "indicates that a strip search without elements of sexual harassment, excessive force, or indeed any physical contact at all is not 'sufficiently serious' under the objective prong" of the Eighth Amendment.  *George*, 2013 WL 5943206 at *10 (dismissing plaintiffs' claims that a strip search for the sole purpose of humiliation violated the Eighth Amendment, because there were no allegations of sexual or verbal abuse, and "allegations of far more serious misconduct by corrections officers have consistently been held insufficiently serious to state an Eighth Amendment claim"); *see also Show v. Patterson*, 955 F. Supp. 182, 191–92 (S.D.N.Y. 1997) (finding no Eighth Amendment violation despite claims that guards strip searched plaintiffs in the facility mess hall for the sole purpose of humiliation); *Walker*, 2016 WL 4411415, at *5–6 (dismissing Eighth Amendment claims where plaintiff alleged that a strip search put him at risk of sexual assault); *Harris v. City of New York*, No. 01 Civ. 6927(LAP), 2003 WL 554745, at *5 (S.D.N.Y. Feb. 26, 2003) (finding plaintiff's allegations of a humiliating strip search did not rise to an Eighth Amendment violation).

Preterotti has not made out a plausible claim that his Eighth Amendment rights were violated.  Under the objective test, Preterotti has not alleged that the strip search was an "extreme deprivation" of a basic human need.  While the strip search may have subjected Preterotti to some humiliation, there is no indication that the search involved sexual harassment, excessive force, or any physical contact beyond that necessary to determine if, as he claimed, Preterotti possessed food taken without authorization.  *See George*, 2013 WL 5943206 at *10.  Regarding the subjective test, Preterotti's Complaint fails to allege that Souliere acted with the requisite deliberate indifference: specifically, there are no allegations

20

that Souliere knew of a risk to Preterotti's health and safety and deliberately disregarded that risk. *See Farmer*, 511 U.S. at 837.  In short, the search here was based on a "legitimate penological purpose"—Souliere's attempt to find institutional property that Preterotti himself stated he had concealed in his pants—and it did not reflect "the wanton infliction of an objectively serious deprivation" of Preterotti's rights. *Vaughn*, 2013 WL 3481413, at *3.

For these reasons, Preterotti has failed to sufficiently allege any violation of his Eighth Amendment rights by Souliere in either his official or individual capacity. Therefore, I recommend that Souliere's Motion to Dismiss be GRANTED, insofar as it seeks dismissal of Preterotti's Eighth Amendment claims.

## V.    Compensatory Damages

Souliere argues that because Preterotti has not alleged any physical injury, he cannot recover compensatory damages under the PLRA.  (Doc. 10 at 14–15.)  Souliere further claims that Preterotti's requests for relief from pain and suffering and emotional injuries are barred.  (*Id.*)

The PLRA provides: "No federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody *without a prior showing of physical injury* or the commission of a sexual act . . . ."  42 U.S.C. § 1997e(e) (emphasis added).  Thus a prisoner bringing a § 1983 action "cannot recover damages for mental or emotional injury for a constitutional violation in the absence of a showing of actual physical injury." *Thompson v. Carter*, 284 F.3d 411, 417 (2d Cir. 2002).  A plaintiff, however, "need not plead physical injury in a complaint covered by the PLRA." *Malik v. City of New York*, No. 11 Civ. 6062(PAC)(FM), 2012 WL

21

3345317, at *16 (S.D.N.Y. Aug. 15, 2012) (citing *Frieson v. City of New York*, No. 11 Civ. 4611(JGK), 2012 WL 1948782, at *2 (S.D.N.Y. May 30, 2012) ("[A]t the motion to dismiss stage, the [c]ourt cannot, and need not, conclusively resolve the factual question of whether or not the plaintiff suffered physical injury . . . ."); *In re Nassau Cty. Strip Search Cases*, No. 99–CV–2844 (DRH), 2010 WL 3781563, at *2 (E.D.N.Y. Sept. 22, 2010) ("As § 1997e(e) is a limitation on recovery and not an affirmative defense to liability, it need not be pled.")).

In any event, the Court need not reach the issue of compensatory damages under the PLRA here because Preterotti has failed to plausibly allege a violation of his constitutional rights.  Similarly, the Court need not address Preterotti's requests for monetary relief for pain and suffering and emotional damages.

## VI.   Punitive Damages

Finally, Souliere seeks dismissal of Preterotti's claim for punitive damages, arguing that Preterotti has failed to allege facts sufficient to show that Souliere acted with evil motive or intent.  (Doc. 10 at 15.)  As a preliminary matter, Preterotti does not appear to be asserting punitive damages as a distinct cause of action, but rather as a form of relief (Doc. 4 at 6).  *See, e.g.*, *Mercer v. Mercer*, No. CV 13–5686(SJF)(WDW), 2014 WL 3654667, at *13 (E.D.N.Y. May 22, 2014) ("A demand for punitive damages does not constitute a separate cause of action distinct from the substantive claim upon which it is grounded.").

In a § 1983 action, "punitive damages may be awarded even in the absence of a compensatory award."  *Robinson v. Cattaraugus Cty.*, 147 F.3d 153, 161 (2d Cir. 1998).  However, the plaintiff must show that the defendant's conduct was "motivated by evil

motive or intent, or . . . involve[d] reckless or callous indifference to the federally protected rights of others." *DiSorbo v. Hoy*, 343 F.3d 172, 186 (2d Cir. 2003) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). Punitive damages "are only available in individual capacity suits," and cannot be recovered against the state, or state officials in their official capacities. *Yorktown Med. Lab., Inc. v. Perales*, 948 F.2d 84, 89 (2d Cir. 1991); *see also Rodriguez v. Phillips*, 66 F.3d 470, 482 (2d Cir. 1995); *Gustafson v. Village of Fairport*, 106 F. Supp. 3d 340, 355 (W.D.N.Y. 2015).

Here, because Preterotti has not sufficiently alleged any violation of his constitutional rights, punitive damages are not available to Preterotti.

## VII. Leave to Amend

The Second Circuit has cautioned that district courts should not dismiss *pro se* complaints with prejudice without granting leave to amend at least once, "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Thompson*, 284 F.3d at 416 (quoting *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991)); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). It is well settled, however, that "leave to amend a complaint need not be granted when amendment would be futile." *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003); *see also Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (holding that a "futile request to replead," even by a *pro se* litigant, "should be denied"). Amendment is futile when the cause of action is substantively flawed and better pleading will not cure the complaint's defects. *Cuoco*, 222 F.3d at 112; *see also Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990).

Applied here, amendment would be futile because Preterotti's official capacity claims against Souliere are not only barred by 42 U.S.C. § 1983 and sovereign immunity, but also Preterotti's claims against Souliere, whether official or individual capacity claims, fail in substance for the reasons explained above. I therefore recommend that the Court decline to grant Preterotti leave to amend his Complaint.

<u>**Conclusion**</u>

For these reasons, I recommend that Souliere's Motion to Dismiss (Doc. 10) be GRANTED, and Preterotti's Complaint (Doc. 4) be DISMISSED without leave to amend. Specifically, I recommend that the Court conclude as follows:

1.      Preterotti's claims are barred by 42 U.S.C. § 1983 and the doctrine of sovereign immunity to the extent Preterotti has sued Souliere in his official capacity for monetary relief. As a DOC official, Souliere is not considered a "person" under § 1983 and is protected from suit by the doctrine of sovereign immunity. Therefore, Preterotti's official capacity claims against Souliere should be DISMISSED. *See supra* pp. 9–12.

2.      Preterotti has failed to state a claim under the Fourth Amendment because the strip search was justified by a legitimate security interest. Therefore, Preterotti's Fourth Amendment claims against Souliere, in both his official and individual capacities, should be DISMISSED in their entirety. *See supra* pp. 12–18.

3.      Preterotti has failed to state a claim under the Eighth Amendment because he has not alleged a sufficiently serious deprivation of his basic needs, or that Souliere was deliberately indifferent with respect to his health or safety. Accordingly, Preterotti's Eighth

Amendment claims against Souliere, in both his official and individual capacities, should be

DISMISSED in their entirety.  *See supra* 18–21.

Dated at Burlington, in the District of Vermont, this 28th day of December, 2016.


/s/ John M. Conroy_____
John M. Conroy
United States Magistrate Judge


Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c).  Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision."  *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).